## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| KATHRYN DICKEN PEARSON, | ) | CASE NO. 1:19-CV-00911-MWM |
| | ) | |
| Plaintiff, | ) | JUDGE MATTHEW W. MCFARLAND |
| | ) | |
| v. | ) | **JOINT MOTION TO APPROVE THE** |
| | ) | **SETTLEMENT AGREEMENT AND** |
| FUNKY'S BUSINESS VENTURES, INC., | ) | **PROPOSED NOTICE** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Kathryn Dicken Pearson and Defendants Funky's Business Ventures, Inc., Michael W. Forgus individually and dba Funky's Catering, FPTA Employee Group, Inc., and Sheakley HR LLC (collectively the "Moving Parties") jointly move this Court to approve the attached Settlement Agreement (Exhibit 1) and Proposed Notice (Exhibit 2).

### I.    Background for Approval of Settlement Agreement and Proposed Notice

On March 31, 2021, the Moving Parties, and their respective counsel participated in a virtual mediation-style settlement conference presided over by Magistrate Judge Karen Litkovitz of the United States District Court for the Southern District of Ohio ("Settlement Conference"). At the Settlement Conference, the Moving Parties agreed to a settlement resolving all claims, including, but not limited to, claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") on a collective action basis, on the terms memorialized in the attached Settlement Agreement.

Because the Settlement Agreement involves an opt-in collective action under the FLSA, the Moving Parties must obtain the Court's approval of the Settlement. In order to finalize the terms of this Settlement Agreement, which have been agreed to by all Parties, the Parties jointly submit this Settlement Agreement to this Court for approval.

Additionally, per the terms of the Settlement Agreement, the Moving Parties have agreed to the form of the Notice to be sent to potential opt-ins, the parameters of the class of potential opt-ins, the process by which the potential opt-ins may elect to opt in to become Opt-In Plaintiffs, and the language of the Consent and Release Form to be used to become an Opt-In Plaintiff. The proposed Notice is also jointly submitted to this Court for approval.

## II. Standard for Approval of FLSA Settlement

This Court has explained that "[t]he Court shall approve an FLSA settlement if there exists a bona fide dispute under the FLSA that can be resolved by a settlement agreement, the agreement was reached through an arms-length negotiation, and the agreement is fair, reasonable, and adequate." *Larue v. Selfiestyler, Inc.*, No. 2:19-cv-03617, 2020 U.S. Dist. LEXIS 228605, at *3-4 (S.D. Ohio Dec. 4, 2020) (citing *Kritzer v. Safelite Solutions*, LLC, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006)). This Court has further explained that, "where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable." *Padilla v. Pelayo*, No. 3:14-cv-305, 2015 U.S. Dist. LEXIS 101801, at *3 (S.D. Ohio Aug. 4, 2015).

As described below, the Settlement Agreement meets these standards and should be approved by this Court.

### 1. A bona fide dispute is resolved by the Settlement Agreement.

The Settlement Agreement reflects the settlement of a bona fide dispute between the Moving Parties. Plaintiff filed a detailed Complaint on behalf of herself and all other similarly situated individuals. Defendants have denied liability for the claims asserted against them. The Moving Parties reasonably dispute the validity and value of Plaintiff's claims. The settlement of these claims was only accomplished with the assistance of a mediator.

2

**2. The Settlement Agreement was reached through an arms-length transaction.**

Here, the settlement was reached and the terms of the Settlement Agreement were negotiated through an arms-length transaction. Defendants retained counsel and denied liability for the claims asserted against them. The parties engaged in informal discovery efforts to reasonably determine the value of the claims. The parties were only able to resolve the case with the assistance of a neutral mediator. The Moving Parties all agree that the Settlement Agreement was negotiated at arms-length in an effort to resolve this bona fide dispute.

**3. The Settlement Agreement reflects a fair, reasonable, and adequate resolution to this matter.**

This Court has previously explained that "[t]o determine whether a settlement is 'fair, reasonable, and adequate,' this Court balances the following factors: 'the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement.'" *Larue v. Selfiestyler, Inc.*, No. 2:19-cv-03617, 2020 U.S. Dist. LEXIS 228605, at *4 (S.D. Ohio Dec. 4, 2020) (quoting, *Padilla v. Pelayo*, No. 3:14-cv-305, 2015 WL 4638618, at *1 (S.D. Ohio Aug. 4, 2015)).

The Moving Parties have all been represented by competent counsel with experience in FLSA cases. As such, the Court should find that the risk of fraud or collusion is low.

The Moving Parties engaged in targeted, informal discovery efforts prior to litigation. Substantial efforts were undertaken by both sides to ensure that Plaintiff had a reasonable understanding of the value of the claims asserted. Both sides used the information produced by Defendants for the purpose of evaluating the claims.

Plaintiff and Counsel for Plaintiff believe that the claims they have asserted in the lawsuit have merit. However, Plaintiff and Counsel for Plaintiff recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute this matter against

Defendants through additional discovery, motion practice, trial, and appeals. Plaintiff and Counsel for Plaintiff also recognize that Defendants have asserted legal and factual defenses to their claims. In addition, Plaintiff and Counsel for Plaintiff have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in any litigation, especially considering the economic effects of the coronavirus pandemic. Plaintiff and Counsel for Plaintiff believe that this Settlement confers substantial benefits upon Plaintiff and opt-in plaintiffs in light of these and other factors. Based upon their evaluation, Plaintiff and Counsel for Plaintiff have determined that the Settlement is fair, reasonable, and in the best interest of Plaintiff and opt-in plaintiffs.

Defendants denied material claims and contentions in the lawsuit. Defendant Sheakley further denies being an employer of Plaintiff or any opt-in plaintiffs. Defendants believe that the law and evidence support their position. Nonetheless, Defendants have concluded that further conduct of the lawsuit would be protracted and expensive. Defendants have taken into account the uncertainty and risks inherent in any litigation. Defendants have therefore determined that it is desirable and beneficial that the lawsuit be settled by the terms and conditions in this Settlement Agreement.

The Moving Parties assert that this Settlement Agreement is fair, reasonable, and adequate.

**4. Approval of Class Representative Payment**

In addition to her proportionate share of the settlement proceeds, the parties agree that Plaintiff is entitled to an additional payment of $10,000.00 ("Class Representative Payment") as consideration for Plaintiff's general release of all claims against Defendants and the Funky's Releasees (set forth in Section II.H.), and for representing the opt-in plaintiffs in the lawsuit. This Court has often found such payments reasonable as they encourage members of a class to take on

4

the role of lead plaintiff and expend their individual efforts on behalf of the class. See e.g., *Croskey v. Hogan Servs.*, No. 2:20-cv-3062, 2021 U.S. Dist. LEXIS 134433, at *3 (S.D. Ohio July 15, 2021).

Without Plaintiff's individual efforts, this Settlement and the benefits flowing to the opt-in plaintiffs would not have occurred. The Moving Parties agree that the Class Representative Payment is reasonable in light of this fact and for the release of Plaintiff's individual claims against Defendant.

### 5. The Moving Parties agree that the attorney fees reflected in this Settlement Agreement are reasonable.

The Moving Parties acknowledge that the attorney fees to be paid under the Settlement Agreement are reasonable for the amount of time invested by Plaintiff's counsel in this matter.

The agreed-upon amount was based on the number of hours expended as of one month prior to the mediation. The attorney fee number was not increased based on the time expended to prepare for mediation, participate in mediation, or draft and negotiate the settlement agreement, and no additional amount will be sought by Plaintiff's counsel for the work required to facilitate the notice and opt-in process under the Settlement Agreement.

In addition, the rates used by Plaintiff's Counsel are reasonable. The Southern District of Ohio "has often referred to the 1983 Rubin Committee rates and applied a 4% annual COLA to measure the reasonableness of requested hourly rates." *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009). Below is a chart showing the Rubin rates that would be allowed, compared to the rates actually applied in this matter.

| Individual | Allowed Rubin Committee Rate | Actual Rate |
|---|---|---|
| Attorney Kristen Myers | $503 | $450 |
| Attorney Caroline Drennen | $274 | $260 |

| Paralegals | $168 | $155 |
| Law Clerks | $106 | $100 |

Because all of the rates are below the allowed rates, and because the actual amount of time compensated is less than the time expended, and because the attorney fees represent less than 20% of the total settlement proceeds, the Moving Parties agree that the agreed-upon attorney fee amount is reasonable.

### III. Approval of § 216(b) Notice

As part of this settlement, the Moving Parties have agreed to the form of the Notice to be sent to potential opt-ins, the parameters of the class of potential opt-ins, the process by which the potential opt-ins may elect to opt in to become opt-in plaintiffs, and the language of the Consent and Release Form to be used to become an opt-in plaintiff. In addition, in an effort to encourage potential opt-ins to participate in this settlement, the Moving Parties have agreed that the terms of this settlement should be communicated to the potential opt-ins inside the Court's Notice. As such, the parties have jointly prepared the attached Notice for the Court's consideration and approval. The parties agree that it should be issued to the potential opt-ins as soon as it is finalized and approved by the Court.

As indicated in the Notice, the parties agree that the opt-in period shall remain open through November 18, 2022. The parties agree that the statute of limitations for the claims being released under this agreement expire on or about November 18, 2022.

### IV. Conclusion

The Moving Parties believe the attached Settlement Agreement is a fair and reasonable resolution to this case, and that the proposed Notice is designed to clearly communicate to potential

6

opt-ins their rights and ability to participate in this settlement.  As such, the Moving Parties respectfully offer the attached Settlement Agreement and attached Notice for this Court's approval.

Respectfully submitted,

BECKMAN WEIL SHEPARDSON LLC

/s/ Kristen M. Myers
Kristen M. Myers (0078047)
Caroline M. Drennen (0097392)
895 Central Avenue, Suite 300
Cincinnati, Ohio 45202
Phone: (513) 621-2100
Fax: (513) 621-0106
Email: kmyers@beckman-weil.com
       cdrennen@beckman-weil.com
*Attorneys for Plaintiff Kathryn Dicken Pearson*

CALFEE, HALTER & GRISWOLD, LLP

/s/ Jennifer W. Colvin
Jennifer W. Colvin (0078296)
Abbey Kinson Brown (0092629)
2800 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202-4728
Phone: (513) 693-4889
Fax: (513) 842-7028
Email: jcolvin@calfee.com
       abrown@calfee.com
*Attorneys for Defendants Funky's Business Ventures, Inc., FPTA Employee Group, Inc. and Michael Forgus*

FROST BROWN TODD LLC

/s/ Neal Shah
Neal Shah (0082672)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
Email: nshah@fbtlaw.com
*Attorney for Defendant Sheakley HR, LLC*

7

## CERTIFICATE OF SERVICE

I certify that on August   26, 2021, and a true and accurate copy of the foregoing the foregoing was filed using the Clerk of Court's CM/ECF filing system, which will send notification of such filing to all counsel of record.


/s/ Kristen M. Myers
Kristen M. Myers

## SETTLEMENT AGREEMENT
## PEARSON V. FUNKY'S BUSINESS VENTURES, INC. ET AL.,
## CASE NO. 1:19-CV-00911
## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

## I.  INTRODUCTION

This Settlement Agreement is made by and between Plaintiff Kathryn Dicken Pearson ("Plaintiff") and Defendants Funky's Business Ventures, Inc., Michael W. Forgus individually and dba Funky's Catering, FPTA Employee Group, Inc., and Sheakley HR LLC (collectively "Defendants") for the sole purpose of settling the Lawsuit captioned *Pearson v. Funky's Business Ventures, Inc., et al.,* Case No. 19-cv-00911, in the United States District Court for the Southern District of Ohio.  This Settlement Agreement is made in compromise of disputed claims, including, but not limited to, claims on an individual basis under state law and claims on a collective action basis under the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Lawsuit and the Released Claims (as defined below) upon the terms and conditions set forth below.

### A.  Parties to the Agreement

This Settlement Agreement is made by and among the following Parties:  (i) Plaintiff, on behalf of herself and the Opt-in Plaintiffs (as defined below), all with the guidance and approval of Counsel for Plaintiffs, and (ii) Defendants.

### B.  Factual Background



From July 2015 until approximately June of 2019, Plaintiff Kathryn Pearson was employed by Defendants on behalf of Funky's Catering in Cincinnati, Ohio. Plaintiff Pearson was employed as a Banquet Employee who performed various non-managerial and non-administrative duties, such as serving customers and bartending. At all times while Plaintiff worked for Defendants, all Banquet Employees participated in a tip pool, which included Captains, Chefs, and other employees Plaintiff alleges were properly classified as managers. During this same time period, Plaintiff asserts that tips owed the Banquet Employees were not always promptly paid by Defendants to Banquet Employees. Defendants dispute that their tip pooling practices were ever unlawful. Nevertheless, Defendants have represented, through their counsel, that the practices alleged to be unlawful were altered after the filing of this case, in or around November 2019.

### C. The Lawsuit

On October 25, 2019, Plaintiff filed a Complaint (Doc. 1, PageID 1) and on December 3, 2019 filed an Amended Complaint (Doc. 5, PageID 32) against Defendants, listing her causes of action as follows: violation of the FLSA; failure to inform about the tip pool in violation of the FLSA; holding or using of employee tips in violation of the FLSA; willful violation of the FLSA; unjust enrichment; and breach of contract.

Plaintiff asserted that Defendants willfully violated the FLSA by requiring Banquet Employees to participate in an invalid tip pool, which included the mandatory

2

tip out of Captains, Chefs, and other who are managers or supervisors under 29 U.S.C. § 203(m)(2)(A), and that Defendants held Banquet Employees' tips for an excessive period of time for Defendants' own use and benefit.

Defendants deny that an invalid tip pool existed, deny that Captains, Chefs, or other tipped employees are managers as defined by the FLSA, deny that tips were unlawfully withheld by Defendants, and assert that at no time was any portion of tips improperly retained or used by Defendants. Defendants also argue that there is no cause of action under the FLSA for failure to timely pay tips when the employer pays tipped employees over minimum wage and does not take an FLSA section 3(m) tip credit, which was the case here.

Plaintiff asserted claims under the FLSA on her own behalf and on behalf of other similarly situated Banque Employees of Defendant's dating back to March 23, 2018.

This case was first stayed by agreement of the parties and Court Order on February 20, 2020 (Doc. 16, PageID 185) to allow the parties to engage in some limited discovery and explore the possibility of settlement. The case was stayed a second time by agreement of the parties and Court Order on April 30, 2020 (Doc. 17, PageID 186) to allow the parties additional time to engage in limited discovery and explore the possibility of settlement in light of the COVID-19 pandemic.

As used in this Settlement Agreement, the term "Lawsuit" shall include all claims identified or referenced in this section as having been raised by the Plaintiff in the

3

litigation of *Pearson v. Funky's Business Ventures, Inc., et al.*, whether or not the claims were included in Plaintiff's Complaint, including, but not limited to, collective action claims for an invalid tip pool under the FLSA, and claims for any tips held by Defendants for an excessive period of time under the FLSA, as well as all claims supplemental thereto, and all other claims asserted on an individual basis.

### D.  Mediation and Court Approval

On March 31, 2021, Plaintiff, Defendants, and their respective counsel participated in a virtual mediation-style settlement conference presided over by Magistrate Judge Karen Litkovitz of the United States District Court for the Southern District of Ohio ("Settlement Conference").  At the Settlement Conference, the Parties agreed to a Settlement resolving all claims, including, but not limited to, claims under the FLSA on a collective action basis, on the terms memorialized herein.

Because the Lawsuit involves an opt-in collective action under the FLSA, the Parties must obtain the Court's approval of the Settlement.  In order to finalize the terms of this Settlement Agreement, which have been agreed to by all Parties, the Parties jointly submit this Settlement Agreement to Judge Matthew W. McFarland for approval.

### E.  Opt-In Plaintiffs

The February 20, 2020 and April 30, 2020 stays were both issued before the Court's consideration of Plaintiff's Motion for Conditional Certification and to Facilitate § 216(b)

4

Notice (Doc. 6, PageID 86). Thus, as part of this settlement, the parties have agreed to the form of the Notice to be sent to potential opt-ins, the parameters of the class of potential opt-ins, the process by which the potential opt-ins may elect to opt in to become Opt-In Plaintiffs, and the language of the Consent and Release Form to be used to become an Opt-In Plaintiff.

The parties have agreed that the terms of this settlement should be communicated to the Potential Opt-Ins inside the Court's Notice. As such, the parties have jointly prepared the attached Notice for the Court's consideration and approval. The parties agree that it should be issued to the Potential Opt-Ins as soon as it is finalized and approved by the Court.

As indicated in the Notice, the parties agree that the opt-in period shall remain open through November 18, 2022. The parties agree that the statute of limitations for the claims being released under this agreement expire on or about November 18, 2022.

The parties agree that the individuals who are entitled to receive this Notice are the 310 employees identified by Defendants as all employees who were employed by Defendants as banquet servers, banquet bartenders, or line cooks for any period of time between and inclusive of, March 23, 2018 and November 19, 2019 (the "Potential Opt-Ins").

Defendants agree to provide Plaintiff's counsel with a list of the name and last-known email address, mailing address, and phone number of each of the Potential Opt-

5

Ins within two weeks after the Court enters an order approving this Agreement. In addition, Defendants agree to provide Plaintiff's counsel with the total number of hours worked by each Potential Opt-In from March 23, 2018 through November 18, 2019, as this information is necessary for determination of the division of the settlement proceeds.

Plaintiff's counsel will be responsible for mailing and/or emailing the Notice to the Potential Opt-Ins, collecting executed Consent and Release Forms from Opt-In Plaintiffs, and filing those Consent and Release Forms with the Court.

**F.    Plaintiff's Benefits of Settlement**

Plaintiff and Counsel for Plaintiff believe that the claims they have asserted in the Lawsuit have merit. However, Plaintiff and Counsel for Plaintiff recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Lawsuit against Defendants through additional discovery, motion practice, trial, and appeals. Plaintiff and Counsel for Plaintiff also recognize that Defendants have asserted legal and factual defenses to their claims. In addition, Plaintiff and Counsel for Plaintiff have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in any litigation, especially considering the economic effects of the coronavirus pandemic. Plaintiff and Counsel for Plaintiff believe that this Settlement confers substantial benefits upon Plaintiff and Opt-in Plaintiffs in light of these and other factors. Based upon their evaluation, Plaintiff and Counsel for Plaintiff have determined that the Settlement is fair, reasonable, and in the best interest

6

of Plaintiff and Opt-In Plaintiffs.

G.    **Defendants' Denial of Wrongdoing or Liability and the Benefits of Settlement**

Defendants denied material claims and contentions in the Lawsuit. Defendant Sheakley further denies being an employer of Plaintiff or any Opt-In Plaintiffs. Defendants believe that the law and evidence support their position.   Nonetheless, Defendants have concluded that further conduct of the Lawsuit would be protracted and expensive. Defendants have taken into account the uncertainty and risks inherent in any litigation. Defendants have therefore determined that it is desirable and beneficial that the Lawsuit be settled by the terms and conditions in this Settlement Agreement.

II.    <u>**TERMS OF SETTLEMENT**</u>

In exchange for the mutual promises, benefits and other good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed by and between Plaintiff (on behalf of herself and on behalf of all Opt-in Plaintiffs) and Defendants, with the assistance of their respective counsel, contingent upon the Court's approval, that the Lawsuit and the Released Claims shall be fully and finally compromised, settled, and released; the Lawsuit shall be dismissed with prejudice; and the agreed upon settlement shall be implemented immediately subject to the terms and conditions set forth herein (the "Settlement").

A.    **Gross Settlement**

The total gross amount of the payments to Plaintiff and Opt-In Plaintiffs, inclusive

7

of attorney fees and Plaintiff's costs is $375,000.00 (the "Total Amount").  Of the Total Amount, Sheakley HR, LLC shall pay no more than $25,000.00 of the Total Amount and the remaining Defendants shall be responsible for the remainder of the Total Amount. The Total Amount shall be divided and payable as described herein and in accordance with the following schedule:

| Date of Payment | Amount of Payment |
| --- | --- |
| 30 days after the Court's Order approving this Agreement | $81,250.00 ("First Tranche") |
| 6 months after payment of the First Tranche | $97,916.66 ("Second Tranche") |
| 12 months after payment of the First Tranche | $97,916.67 ("Third Tranche") |
| 18 months after payment of the First Tranche | $97,916.67 ("Fourth Tranche") |

**B.    Consideration to Plaintiff and Opt-In Plaintiffs**

The Total Amount, less the Class Representative Payment (defined below), less Attorney Fees (defined below), and less Costs (defined below), which calculated amount shall be referred to as the "Settlement Funds," shall be distributed among Plaintiff and the Opt-In Plaintiffs as follows.

Because of the intentionally lengthy opt-in period and because of the structure of the settlement payments, the Proportionate Share may be paid in more than one payment to each Plaintiff/Opt-In Plaintiff (the "Settlement Payments").

Upon Court approval of this Settlement, the parties will work together to estimate

8

the Settlement Funds (the "Estimated Settlement Funds") and calculate the total number of hours worked by all Potential Opt-Ins from March 23, 2018 – November 18, 2019 ("Maximum Total Hours"). When each Consent and Release Form is received, that Plaintiff/Opt-In Plaintiff shall receive an initial payment equal to the number of hours that Plaintiff/Opt-In worked from March 23, 2018 – November 18, 2019, divided by the Maximum Total Hours, and then multiplied by the Estimated Settlement Funds (the resulting amount hereinafter referred to as the "Initial Settlement Payment").

Initial Settlement Payments shall be paid in the order Consent and Release Forms are received, as funds are available. For example, if 150 Consent and Release Forms are received in advance of the First Tranche and the First Tranche amount is only enough to cover the Initial Settlement Payments of 70 of them, then the first 70 will be paid as part of the First Tranche and the remaining 80 will be paid as part of the Second (or later) Tranche.

After the Opt-In Period closes, the parties will calculate the final Settlement Amount and calculate the total number of hours worked by all Plaintiff/Opt-In Plaintiffs from March 23, 2018 – November 18, 2019 ("Total Hours of Plaintiff/Opt-In Plaintiffs"). For each Plaintiff/Opt-In Plaintiff, the parties will divide the number of hours worked by each Plaintiff/Opt-In Plaintiff from March 23, 2018 – November 18, 2019 by the Total Hours of Plaintiff/Opt-In Plaintiffs to arrive at a percentage. That percentage will be multiplied the Settlement Funds to arrive at each Plaintiff/Opt-In Plaintiff's proportionate

4853-0732-4141, v.6

share of the Settlement Funds ("Proportionate Share"). If the Proportionate Share is greater than the Initial Settlement Payment, a payment for the difference shall be paid to the Plaintiff/Opt-In Plaintiff (the "Final Settlement Payment").

The total amount of all Initial Settlement Payments and all Final Settlement Payments shall be equal to the Settlement Amount.

These Settlement Payments are partially attributable to claimed unpaid tips and partially attributed to liquidated damages and other non-wage claims. As such, each Settlement Payment shall be divided into two payments. One half of each Settlement Payment shall be attributable to claimed unpaid wages, upon which Defendants will pay all employer payroll taxes and related employer contributions, will process all associated withholdings, and will report such payments using IRS form W-2. The other half of each Settlement Payment shall not be attributable to claimed unpaid wages, no withholdings will be taken, and which will be reported using IRS Form 1099-MISC.

**C.    Class Representative Payment**

In addition to her Proportionate Share, the parties agree that Plaintiff is entitled to an additional payment of $10,000.00 ("Class Representative Payment") as consideration for Plaintiff's general release of all claims against Defendants and the Funky's Releasees (set forth in Section II.H.), and for representing the Opt-In Plaintiffs in the Lawsuit. Without Plaintiff's efforts, this Settlement and the benefits flowing to the Opt-In Plaintiffs would not have occurred.

10

The Class Representative Payment shall be deducted from the Total Amount. The Class Representative Payment shall be paid as non-wage compensation, reportable on an IRS Form 1099-MISC.

The Class Representative Payment may be paid in more than one payment, in accordance with the terms of this Agreement. Counsel for Defendants shall deliver each portion of the Class Representative Payment to Counsel for Plaintiff on or before the due date for each Tranche. Counsel for Plaintiff shall deliver each portion to Plaintiff via hand delivery (acknowledgement of receipt required) or certified mail delivery to the address provided by the Plaintiff (delivery receipt required). Counsel for Plaintiff shall provide to Counsel for Defendants a copy of the proof of delivery for each portion of the Class Representative Payment.

**D.** **Attorney's Fees**

The parties agree that the total amount due for attorney fees related to the representation of Plaintiff/Opt-In Plaintiffs, as well as the administration of this Settlement shall be $73,000 ("Attorney Fees"), and that said sum shall be deducted from the Total Amount. The amount shall be paid as described below by check payable to Beckman Weil Shepardson LLC, 895 Central Ave. Suite 300, Cincinnati, Ohio 45202. Payments made pursuant to this Section II.D. shall constitute full satisfaction of any claim against Defendants or any of the Funky's Releasees by Plaintiff, Opt-In Plaintiffs, or Counsel for Plaintiff, for fees related to the Lawsuit and the subject matter of the Lawsuit.

11

No withholdings shall be made from payment of Attorney Fees, and Attorney Fees will be reportable on an IRS Form 1099-MISC. Beckman Weil Shepardson LLC agrees to provide to Defendants a copy of its Form W-9 within 10 business days of the Effective Date of this Agreement.

E.     **Costs**

As of the signing of this Agreement, Plaintiff's costs in this matter total $428.70 ("Current Costs"). The parties recognize that Plaintiff's Counsel may incur additional costs related to the administration of this Settlement, such as copying and mailings related to Notice and dissemination of payments ("Additional Costs"). The parties specifically recognize that these Additional Costs shall not include any charge for attorney or paralegal time, and are limited to Plaintiff's Counsel's actual expenses. The parties agree that the Current Costs, plus Additional Costs shall be deducted from the Total Amount, and shall be paid to Plaintiff's Counsel as described below ("Total Costs").

Payment of Total Costs made pursuant to this Section II.E. shall constitute full satisfaction of any claim against Defendants or any of the Funky's Releasees by Plaintiff, Opt-In Plaintiffs, or Counsel for Plaintiff, for costs related to the Lawsuit and the subject matter of the Lawsuit.

F.     **Processing of Payments**

The payment of the First, Second, and Third Tranches shall be made according to the following priority:

4853-0732-4141, v.6

1) One-quarter of the Class Representative Payment shall be paid.

2) One-quarter of Attorney Fees shall be paid.

3) The remaining Tranche amount shall be used to pay the Initial Settlement Payment to Opt-In Plaintiffs in the order they opted in. (Counsel for both parties will confer to determine a cut-off date for receipt of Consent and Release Forms before payment of each Tranche to ensure sufficient time for payroll processing.)

4) Any remaining Tranche amount shall be used to pay Current Costs.

5) Any remaining Tranche amount shall be used to pay any remaining portion of the Class Representative Payment.

6) Any remaining Tranche amount shall be used to pay any remaining portion of Attorney Fees.

7) Any remaining Tranche amount shall be placed in Defense counsel's IOLTA account (or other escrow account agreed to by the parties) and added to the amount of funds available in the following Tranche.

The payment of the Fourth Tranche shall be made according to the following priority:

1) Any remaining portion of the Class Representative Payment shall be paid.

2) Any remaining portion of Attorney Fees shall be paid.

13

4853-0732-4141, v.6

3) The unpaid portion of Total Costs shall be paid.

4) Initial Payments shall be made to any Opt-In Plaintiff who has not already received their Initial Payment.

5) The remaining Tranche amount (together with any amounts escrowed from prior Tranches) shall be distributed as Final Settlement Payments to Plaintiff/Opt-In Plaintiffs according to the formula described above.

Counsel for Defendants shall deliver all Settlement Payments to Counsel for Plaintiff on or before the due date for each Tranche. Counsel for Plaintiff shall deliver said payments to Plaintiff and Opt-In Plaintiffs via hand delivery to the Plaintiff or Opt-In Plaintiff (acknowledgement of receipt required) or certified mail delivery to the address provided by the Plaintiff or Opt-In Plaintiff (delivery receipt required). Counsel for Plaintiff shall provide to Counsel for Defendants a copy of the proof of delivery for all Settlement Payments.

**G.     Release of Defendants and the Funky's Releasees By Plaintiff and Opt-In Plaintiffs**

Upon the Effective Date, Plaintiff and each of the Opt-in Plaintiffs (who shall be identified after the Effective Date) shall have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all claims against any of the Defendants, as well as each of their subsidiaries, affiliates, successors, assigns, and each of these entities' past or present directors, officers, employees, partners, members, owners, franchisors, principals, fiduciaries, administrators, agents, underwriters,

14

insurers, co-insurers, reinsurers, shareholders, attorneys, accountants, auditors, banks, investments banks, associates, and personal or legal representatives (collectively, the "Funky's Releasees"), including all claims, known or unknown, arising under any Federal, state or local law, for any type of relief against Defendants or Funky's Releasees, whether declaratory relief, wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary remedy, as well as injunctive relief, restitution, or other equitable relief, related to (i) the subject matter of this Lawsuit; and (ii) any wage and hour issue related to Plaintiff or Opt-In Plaintiffs' employment by Defendants at any time from March 23, 2018 through the Effective Date of this Agreement.

**H.     General Release of Defendants and the Funky's Releasees By Plaintiff**

In addition, upon the Effective Date, Plaintiff shall have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged Defendants and the Funky's Releasees from any and all claims, causes of action, suits, liabilities, promises, damages, attorney's fees, costs, debts, interests, contributions, judgments, orders, entitlements, notices, rights to appeal, and any other obligation of whatever kind which may be released, known or unknown, suspected or unsuspected, whether arising under common law, statute or regulation, whether arising in contract, tort, equity or otherwise, that Plaintiff may have against any of Defendants or the Funky's Releasees as of the date of Plaintiff's signature on this Settlement Agreement.  This release includes, but is not

15

limited to, all rights and claims arising under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, the Family and Medical Leave Act, any state leave or workers' compensation retaliation law, and any other claims related to harassment, retaliation, discrimination, or wrongful discharge arising under any federal, state or local law. This release also includes, but is not limited to, all claims for negligence, breach of contract, defamation, emotional distress and any and all other claims arising under any federal, state, or local law. Plaintiff specifically acknowledges and agrees that the release in this Section II.H. is a general release of all claims and rights without regard to whether those claims and rights relate to or arise from Plaintiff's employment with any of the Defendants.

**I.    Older Workers' Benefits Protection Act**

In accordance with the Older Workers Benefit Protection Act ("OWBPA"), Plaintiff specifically acknowledges and agrees that: (i) this Settlement Agreement contains a waiver of her rights under the Age Discrimination in Employment Act; (ii) the foregoing release was separately negotiated in exchange for valuable consideration which she would not otherwise be entitled; (iii) she has been given at least 21 calendar days within which to consider all terms and conditions of this Settlement Agreement; (iv) she may waive the 21-day period by executing this Settlement Agreement earlier; and (v) she has been advised to consult with an attorney as required by the OWBPA.

16

4853-0732-4141, v.6

In accordance with the OWBPA, Plaintiff shall have the right to revoke her release of age discrimination claims for a period of seven days following her execution of the Agreement. If Plaintiff wishes to revoke her waiver of age-related claims, she must cause written notice of such revocation to be delivered to counsel for Defendants within the seven-day revocation period.

Plaintiff further agrees that (i) this Settlement Agreement is written in a manner calculated to be understood by her; (ii) she has carefully reviewed all of the terms and conditions of this Settlement Agreement; (iii) she has had a reasonable period of time to consider this Settlement Agreement; (iv) she fully understand the terms and conditions of this Settlement Agreement; and (v) that she freely, voluntarily and knowingly enters into this Settlement Agreement without any coercion or undue influence.

J.   **Miscellaneous Provisions Regarding All Releases**

Notwithstanding the foregoing, the releases set forth above do not prevent Plaintiff or Opt-In Plaintiffs from enforcing the terms of this Settlement Agreement or pursuing any workers' compensation or unemployment benefits to which they may be entitled.

Plaintiff and Opt-In Plaintiffs do not waive, nor shall any release contained in this Settlement Agreement be construed to waive, any claim or right that is not subject to waiver under applicable law, including the filing of a charge with an administrative agency or a claim for unemployment compensation. Plaintiff and Opt-In Plaintiffs retain

4853-0732-4141, v.6

the right to communicate honestly with administrative agencies about their employment; however, each Plaintiff and Opt-In Plaintiff agrees that should that individual file a charge with an administrative agency after the execution of this Settlement Agreement regarding the wage and hour claims that are the subject of this Agreement, or should an administrative agency accept jurisdiction over a matter involving his or her employment with any Defendant or any of the Funky's Releasees regarding the claims that are the subject of this Agreement, that individual is not entitled to any recovery, monetary or otherwise, from or as a result of that charge if such charge is related to the claims that are the subject of this Agreement. Further, Plaintiff agrees that should she file a charge with an administrative agency after the execution of this Settlement Agreement, or should an administrative agency accept jurisdiction over a matter involving Plaintiff's employment with any Defendant or any of the Funky's Releasees regarding any matter that is the subject of this Agreement, that Plaintiff is not entitled to any recovery, monetary or otherwise, from or as a result of that charge.

Plaintiff acknowledges, and each of the Opt-In Plaintiffs shall be deemed by operation of his or her Opt-In Notice to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement of which the releases are a material part.

As used in this Settlement Agreement, the "Released Claims" shall refer to all claims and other rights released pursuant to this Settlement Agreement.

18

## III. MISCELLANEOUS PROVISIONS

The Parties (i) acknowledge that it is their intent to consummate the Settlement set forth in this Agreement, (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement, and (iii) agree to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement. No person shall have any claim against Plaintiff, Counsel for Plaintiff, Defendants, Counsel for Defendants, or any of the Funky's Releasees based on the payments made or other actions taken in accordance with this Settlement.

This Settlement Agreement compromises claims that are contested in good faith. The Parties agree that the terms of the Settlement Agreement were negotiated in good faith by them and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. Neither the Settlement Agreement, nor any act performed or document executed in furtherance of the Settlement, (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any of the Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their respective successors-in-interest. Counsel for

19

Plaintiff, on behalf of the Plaintiff and Opt-In Plaintiffs, are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effect its terms, and also are expressly authorized to enter into any non-material modifications or amendments to this Settlement Agreement to effect the terms of the Settlement.

Plaintiff and Defendants agree that none of them will disparage, speak adversely of, or otherwise criticize the other Parties. The Parties further agree that they will act in good faith at all times in dealing with each other and will support and maintain the professional reputation of each of the Parties. Plaintiff, on behalf of the Opt-In Plaintiffs additionally agrees that the Opt-In Plaintiffs will not publicly disparage the Defendants. Nothing herein shall be construed to limit any Party's rights under Section 7 of the National Labor Relations Act., and nothing herein shall restrict Plaintiff's ability to talk about the allegations and settlement of this Lawsuit, particularly for the purpose of facilitating the opt-in process herein. The Settlement constitutes the entire agreement among the Parties hereto. No representations, warranties, or inducements have been made to any Party concerning the Settlement other than the representations, warranties, and covenants contained and memorialized in this document. Except as otherwise provided herein, each Party shall bear its own costs and fees.

Each person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

20

This Settlement Agreement may be executed in one or more counterparts, including individual Consent and Release Forms submitted by Opt-In Plaintiffs. All executed counterparts and each of them shall be deemed to be one and the same instrument.

This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties; but this Settlement is not designed to and does not create any third party beneficiaries except for the Funky's Releasees, who are intended to be third party beneficiaries.

The Parties agree the Court shall have continuing jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing this Settlement Agreement.

This Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Ohio, and the rights and obligations of the Parties shall be construed and enforced in accordance with and governed by the substantive laws of the United States and the State of Ohio without giving effect to the State of Ohio's choice of law principles.

The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Settlement Agreement. The Parties

21

acknowledge that the terms of the Settlement Agreement are contractual and are the product of negotiations between the Parties, by or with the assistance of their respective counsel. Each Party through their counsel cooperated in the drafting and preparation of the Settlement Agreement.

The "Effective Date" of this Settlement Agreement shall be the date on which this Settlement Agreement has been fully executed by all of the Parties("Effective Date").

By signing below, the Parties acknowledge that they have read the foregoing Agreement, understand its contents, accept and agree to the provisions it contains, and hereby execute it voluntarily and knowingly and with full understanding of its consequences.

**PLAINTIFF:**

_____
**Kathryn Pearson, Individually and on Behalf of the Opt-In Plaintiffs**

Date:_____


**COUNSEL FOR PLAINTIFF AND OPT-IN PLAINTIFFS:**

_____
Kristen M. Myers
Caroline M. Drennen
Beckman Weil Shepardson LLC

**DEFENDANTS:**

**Funky's Business Ventures, Inc.**

By: _____

Its:_____

Date:_____


**Michael W. Forgus DBA Funky's Catering**

By: _____

22

4853-0732-4141, v.6

Centennial III                              Its:_____
895 Central Avenue, Suite 300
Cincinnati, Ohio  45202                     Date:_____


**Michael W. Forgus**

_____

Date:_____


**FPTA Employee Group, Inc.**

By: _____

Its:_____

Date:_____


**Sheakley HR LLC**

By: _____

Its:_____

Date:_____


**COUNSEL FOR DEFENDANTS
FUNKY'S BUSINESS VENTURES,
INC., MICHAEL W. FORGUS, AND**

23

**FPTA EMPLOYEE GROUP, INC.:**

_____

Jennifer W. Colvin
Abbey K. Brown
Calfee, Halter & Griswold LLP
2800 First Financial Center
255 East Fifth Street
Cincinnati, Ohio  45202


**COUNSEL FOR DEFENDANT
SHEAKLEY HR LLC:**

_____

Neal Shah
Frost Brown Todd LLC
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, Ohio  45202-3957

4853-0732-4141, v.6

August __, 2021

## NOTICE OF SETTLEMENT OF LAWSUIT

### (with attached form to obtain a settlement payment)

TO:        All former and current banquet servers, banquet bartenders, or other tipped banquet employees of Funky's Catering who worked for any period of time between March 23, 2018 and November 18, 2019.

FROM:    Judge Matthew W. McFarland, U.S. District Court for the Southern District of Ohio

This Notice informs you of the settlement of a wage-and-hour lawsuit brought by Kathryn "Katie" Pearson on behalf of all other similarly-situated tipped-out banquet employees of Funky's Business Ventures, Inc., Michael W. Forgus individually and dba Funky's Catering, FPTA Employee Group, Inc., and/or Sheakley HR LLC  (collectively "Funky's").

### 1. INTRODUCTION AND SUMMARY

The Settlement announced by this Notice makes tip and other compensation available to all current and former tipped-out banquet employees of Funky's who did not receive all of their tips and/or whose tips were not timely paid between March 23, 2018 and November 18, 2019.

### TO PARTICPIATE IN THE SETTLEMENT, YOU MUST RETURN THE ATTACHED FORM

### 2. THE LAWSUIT

On October 25, 2019, a lawsuit seeking payment for unpaid tips and delayed payment of tips was filed against Funky's by Kathryn "Katie" Pearson, who worked for Funky;s as a tipped-out banquet employee. The lawsuit alleges 1) that Funky's required banquet employees to participate in an invalid tip pool, which included the mandatory tip out of Captains, Chefs, and other who are managers or supervisors under 29 U.S.C. § 203(m)(2)(A), and 2) that Funky's held banquet employees' tips for an excessive period of time for its own use and benefit. The lawsuit asserts these claims under the federal Fair Labor Standards Act. Funky's has denied liability and violations of wage and hour laws.

### 3. THE SETTLEMENT

To avoid the time, cost, fees and uncertainty of further litigation, the Settlement was reached between the Representative Plaintiff and Funky's and has been approved by the U.S. District Court as fair, reasonable, and adequate. The terms of the Settlement are summarized below.

### A. Settlement Payments to Funky's Employees and Released Claims

The Total Amount to be paid by Funky's in settlement of this matter is $375,000.00 in four payments made between June 30, 2021 and December 30, 2022. That total amount, less payment of the Class Representative Payment, Attorney Fees, and Total Costs will be divided among those individuals who are eligible to participate in this Settlement and who complete the forms necessary to opt-in to this Settlement (the "Opt-In Plaintiffs). The amount to be distributed to each Opt-In Plaintiff will be based on that individual's total hours worked during the period of March 23, 2018 and November 18, 2019, as compared to the total number of hours worked during that same period by all Opt-In Plaintiffs. Because of the manner in which the settlement payments have been structured, payments to Opt-In Plaintiffs will be made in the order they are received. If less than all of the Settlement Funds have been distributed at the time of the December 30, 2022 payment, any remaining funds will be distributed on a prorata basis to all Opt-In Plaintiffs.

As Representative Plaintiff, Ms. Pearson will receive her proportionate share of the settlement funds along with the Opt-In Plaintiffs, and will also receive an additional Class Representative Payment of $10,000.00 based on her involvement in the matter and assistance to Class Counsel. Class Counsel will receive $72,000 in attorney fees and reimbursement of the actual expenses (yet to be determined, but expected to be less than $5,000) incurred in bringing the lawsuit and administering this Settlement. In exchange, the lawsuit will be dismissed, and participating employees will release Funky's from any and all wage-and-hour claims that were asserted in the lawsuit.

**EXHIBIT**

2

## B. Advantages of the Settlement and Class Counsel's Recommendation

Class Counsel recommend the Settlement. It offers settlement payments to tipped-out banquet employees who did not receive all of their tips and/or whose tips were not timely paid, without the delay, uncertainty, and risk of continuing with the lawsuit. While, due to the size of the class and detail of the data, the precise damages have not been calculated per person, someone who worked 250 hours during the relevant time period should be entitled to a minimum of $XXX in payments under this Settlement.

Funky's encourages all current and former eligible employees to submit the forms required to become an Opt-In Plaintiff and participate in this Settlement.

### 4. HOW TO RECEIVE YOUR SETTLEMENT PAYMENT

**To participate in the Settlement, you must complete and return the attached Form entitled "Consent and Release Form" no later than November 18, 2022.** You can return the Consent and Release Form by: (a) signing it electronically (eSigning) via PDF; (b) mailing it to Class Counsel in the self-addressed and postage-prepaid envelope included with this Notice; (c) faxing the form to Class Counsel at 513-621-0106; (d) scanning the form and emailing it to Class Counsel at funkyslawsuit@beckman-weil.com. If your address has changed or changes before December 30, 2022, you must provide your name and current mailing address to Class Counsel, or you may not receive any final payment.

Funky's will issue the settlement checks payable to the employees and you will be able to pick them up in person from Class Counsel or Class Counsel will mail them to you via certified mail Checks will be distributed on or around June 30, 2021, December 30, 2021, June 30, 2022, and December 30, 2022. You may receive payment more than one time. Each time you receive payment, you will be issued two checks: half the amount will be paid as wages, less federal and state tax withholdings, garnishments, child support, and other deductions required by law; the other half of the amount is not attributable to wages, and no withholdings will be taken.

**ALL FORMS MUST BE ESIGNED, POSTMARKED, FAXED, OR EMAILED BY NOVEMBER 18, 2022. THE SOONER YOU SUBMIT THE FORM, THE SOONER YOU WILL RECEIVE PAYMENT.**

### 5. FURTHER INFORMATION

Further information about the settlement may be obtained from Class Counsel whose contact information is below.

> Kristen M. Myers
> Caroline M. Drennen
> Beckman Weil Shepardson LLC
> Centennial III
> 895 Central Avenue, Suite 300
> Cincinnati, OH 45202
> Phone: 513-621-2100
> Facsimile: 513-621-0106
> funkyslawsuit@beckman-weil.com

**PLEASE DO NOT CONTACT THE COURT**

**THIS NOTICE HAS BEEN AUTHORIZED BY THE HONORABLE MATTHEW W. MCFARLAND OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR OF FUNKY'S DEFENSES.**

## CONSENT AND RELEASE FORM

By signing and returning this form, I consent to become an Opt-In Plaintiff by opting into the lawsuit, Pearson v. Funky's Business Ventures, Inc. et al., Case No. 1:19-cv-00911 (the "Lawsuit"), pending in the U.S. District Court for the Southern District of Ohio.

**I understand that I will receive one or more settlement payments in an amount to be determined, based on the number of hours I worked and the number of hours worked by other individuals who opt to participate in this Settlement.** I understand that half of the amount paid to me will be compensation for unpaid tips for which I will receive payment, less federal and state tax withholdings, garnishments, child support, and other deductions required by law, and which will be reported on IRS form W-2. I understand that the other half of the amount paid to me is not attributable to wages, no withholdings will be taken, I shall be solely and individually responsible for any tax obligations and consequences, and Funky's will report such payments using IRS form 1099.

I agree to be represented by Plaintiff's Counsel, Beckman Weil Shepardson LLC, and to be bound by the Settlement, which has been approved by Judge McFarland. I consent to the dismissal of the Lawsuit and my claims by and through Representative Plaintiff Pearson. I designate Representative Pearson and Beckman Weil Shepardson LLC to execute all appropriate documents to effectuate my payment and the settlement of the Lawsuit.

I hereby fully, finally, and forever release, dismiss with prejudice, relinquish, and discharge all claims against any of the Defendants, as well as each of their subsidiaries, affiliates, successors, assigns, and each of these entities' past or present directors, officers, employees, partners, members, owners, franchisors, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, shareholders, attorneys, accountants, auditors, banks, investments banks, associates, and personal or legal representatives (collectively, the "Funky's Releasees"), including all claims, known or unknown, arising under any Federal, state or local law, for any type of relief against Defendants or Funky's Releasees, whether declaratory relief, wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary remedy, as well as injunctive relief, restitution, or other equitable relief, related to (i) the subject matter of this Lawsuit other than any breach of contract or unjust enrichment claim; or (ii) any wage and hour issue related to my employment by Defendants at any time from March 23, 2018 through November 18, 2019.

**I have carefully read and fully understand all items in this agreement and am voluntarily signing it.** I understand that if I have any questions, I know I have the right to discuss this agreement with the law firm of Beckman Weil Shepardson. I also understand that any issues relating to this agreement will be addressed under the laws of the State of Ohio.

**PLEASE READ AND CONSIDER THIS AGREEMENT CAREFULLY BEFORE EXECUTING THIS AGREEMENT. THIS AGREEMENT INCLUDES A RELEASE OF ALL WAGE AND HOUR CLAIMS.**

Signature: _____

Full Name (print clearly): _____

Date: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Information below this line will NOT be filed with the Court.**

Address (make any necessary corrections to the right of the incorrect information, as payments may be sent to this address):

{First Name Last Name}
{Address}
{City, State Zip}

Please provide this information so we can contact you about your payments if needed:

Phone: _____        Email: _____

**eSign via PDF or return to:**
Mail: Beckman Weil Shepardson LLC / 895 Central Avenue, Suite 300 / Cincinnati, Ohio 45202
Fax: 513-621-0106
Email: funkyslawsuit@beckman-weil.com
**Must be eSigned, postmarked, faxed, or emailed by November 18, 2022**